(562 P.2d 102)
No. 48,310

WILLIAM H. GONSER, SHERIFF, AND EDWIN L. HOHMAN, DEPUTY SHERIFF OF CLAY COUNTY, KANSAS, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF CLAY COUNTY, KANSAS, *Appellee.*

Opinion filed March 4, 1977.

*Bruce H. Wingerd*, of Clay Center, for appellants.
*Dan H. Myers*, of Fick, Myers & Horne, of Manhattan, for appellees.
*John Berglund*, of Clay Center, *Amicus Curiae.*

REES, J.: The board of county commissioners of Clay county terminated a traffic safety program. Plaintiffs sought review by the district court. The lower court upheld the board and plaintiffs have appealed.

In 1973, and in response to an application made by the board, the Kansas Highway Safety Coordinating Office made a federal and state funded grant-in-aid to Clay county for a Selective Traffic Enforcement Program project. The project was implemented by the creation and operation of a traffic safety division in the office of the sheriff. The grant money was furnished to the county on the basis of approximately three dollars for each dollar

of local contribution. It does not appear from the record whether the local contribution was made by cash contribution, by in-kind services and materials contribution, or a combination of both. The grant-in-aid was for a two-year period expiring July 31, 1975. The project application appears to have included representations by the board that the traffic safety division would be maintained and that its operations would not be de-emphasized upon the conclusion of the project.

Plaintiff Gonser was the Clay county sheriff. Plaintiff Hohman, a deputy sheriff, was the individual assigned by the sheriff to conduct the program as traffic safety officer. The grant money and local contribution apparently were used for payment of Hohman's salary and the furnishing of services and equipment for his use.

On June 30, 1975, the board advised the sheriff by letter that the position of traffic safety officer would terminate on July 31, the date of expiration of the grant-in-aid. On July 14, the board sent another letter to the sheriff and in it he was advised that the deputy sheriff position held by Hohman would be terminated effective August 1 because of lack of funds, that law enforcement equipment was to be removed from a certain automobile and that the keys to the automobile were to be returned to the county clerk by that date.

The sheriff and Hohman commenced these proceedings on July 30 by filing notice of appeal in accordance with K.S.A. 19-223. They asked that the board be required to pay reasonable compensation for Hohman's services and that it be enjoined from interfering with the performance of the sheriff's duties and responsibilities. The trial court entered a temporary order directing that for a period of thirty days Hohman be continued in his position, that he be paid and that he have use of the automobile. At the conclusion of trial held prior to the expiration of the thirty days, the court held that the board's refusal to fund and its abolition of the traffic safety program were not arbitrary or capricious actions and it rejected plaintiffs' claims and sustained the board's action.

The trial court's oral statement of findings and its rulings included the following, in part:

". . . I appreciate the position of both of the parties . . . having known and worked with the Sheriff for the last five or six years, if he were to make a

recommendation to me, and it was up to me to make a decision as to whether he would have additional help, I would sure be inclined to go along with the recommendation, . . .

". . . ."

"But, the matter doesn't really boil down to what I think, . . . I think what I might just say generally, that I can't find that there is any evidence in this case that the County Commissioners acted arbitrarily and capriciously. I might not·agree with their judgment. . . .

". . . ."

"We are talking about a subjective program that really never got off the ground. Whether over a period of time it would have saved some lives and prevented property damage, I don't know. . . . but, be that as it may, I am just going to, as a general proposition say that the law in this case requires that the plaintiff prove by a preponderance of the evidence, that the action of the Commissioners was an arbitrary act, and that is the abolishing and not funding of the position, that it was an arbitrary and capricious act. I think the evidence, all taken together, one could probably conclude a number of factors went into their ultimate consideration not to fund the program.

"Perhaps one of them—how valid it is, I do not know—is the lack of the Commissioners' knowledge as to what the program was doing. In other words, they commissioned the Big Lakes Development Commission to tell them about the program, and so we are probably talking about a lack of communications. . . . They have to recognize that with the inflation, and that taken with the fact our legislature has built in raises for various county employees, this is a continual problem making the funds that are available in the general fund stretch.

". . . I am satisfied from their testimony that they were satisfied, premised upon the testimony of the auditor, that they would have to be very cautious as to how they spent any money. Finally, I think the evidence would show that perhaps the report did not give the Commissioners a yes or no answer, but they found it to be informative and perhaps the report was suggestive of the proposition that maybe they weren't getting their money's worth. Maybe it wasn't accomplishing what they had intended, at least, maybe it wasn't worth what they were paying for it, as Mr. Hays said. These are judgments that these gentlemen have to make and they have indicated they aren't easy decisions.

"So, that being the case, I am going to find for the defendants in this case, and find from the evidence that the Commissioners have not acted arbitrarily or capriciously; but rather that their judgment is premised upon reasons as I have indicated."

The plaintiffs complain that they were denied procedural due process in that they were not afforded notice and opportunity to appear before the board in regard to the program termination. They further complain that the board should have made written findings of fact and conclusions of law when it acted to terminate the program.

Procedural due process, that is, notice of hearing and right to be heard, is required when an agency or board performs quasi-judicial acts. *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 205 Kan. 780, 473 P.2d 72.

Findings of fact are not required to be made by agencies and boards, absent their own rules or a statute, even though they would assist judicial review. *Creten v. Board of County Commissioners*, 204 Kan. 782, 466 P.2d 263; *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, 539 P.2d 1.

Plaintiffs filed a petition setting forth all their objections to the action of the board. The trial court declined the board's motion to dismiss for lack of jurisdiction under K.S.A. 19-223. The trial to the court was on all issues raised by plaintiffs. The trial court's ruling that the board's action not be set aside on the ground that its action was not arbitrary or capricious implicitly reflects that the trial court reviewed the board's action as being legislative in nature.

It has been held that K.S.A. 19-223 affords jurisdiction only in those instances where a board of county commissioners has engaged in judicial or quasi-judicial action. *Fulkerson v. Comm'rs of Harper Co.*, 31 Kan. 125, 1 Pac. 261; *In re Petition of McAdam*, 181 Kan. 73, 309 P.2d 648. The board urged the corollary rule that the district court had no jurisdiction where the action being questioned was an exercise of legislative, executive, administrative or discretionary power.

The pivotal issue to be resolved is determination of the nature of the board's action. If the action was legislative or administrative and not judicial or quasi-judicial, the function of the trial court was to decide whether such action was arbitrary or capricious.

The record on appeal contains neither narrative nor verbatim statement of the trial proceedings other than the court's statement of its findings and rulings. However, from the court's statements, other parts of the record on appeal and the parties' briefs, we have made what we believe are correct deductions concerning the evidence presented. The court considered the minutes of the board's meetings at which it acted, the letters from the board to the sheriff, and testimony of some or all of the members of the board. Further, there were presented to the court a letter request from the board to the county attorney requesting his opinion as to

the propriety of board termination of the program and his letter opinion that, under the facts and in light of the program background, the termination of the program by the board would be arbitrary. The minutes recited little other than the decision of the board to transmit the letters to the sheriff.

The Supreme Court has recently considered the tests to be applied to distinguish quasi-judicial and legislative actions. In *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P.2d 966, a workmen's compensation action, it was said:

"It is apparent from the cases that a distinction is recognized between 'legislative' and 'judicial' functions performed by different administrative officers or bodies, and that the scope of judicial review of the actions of administrative agencies does vary with the subject matter of the review or the function of the agency. [pp. 177-178]

"The remaining question is whether the determinations made by the workmen's compensation director under the Kansas workmen's compensation act are essentially legislative or administrative or are essentially judicial or quasi-judicial. . . . When courts are confronted with the problem of determining whether an administrative agency performs legislative or judicial functions, they rely on certain tests to aid in classifying the agency's functions. One such test is whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative agency must make. Another test is whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body. [cases cited] [p. 178]

"The classic statement setting out the abstract test to be applied by courts in distinguishing the judicial power from legislative power when examining administrative agencies was made by Justice Holmes speaking for the court in *Prentise v. Atlantic Coast Line,* 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67. He there said:

" '. . . A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. . . .' (p. 226)

"In applying the tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer, board or agency which performs it, that determines its character." (pp. 178-179)

In *Thompson v. Amis,* 208 Kan. 658, 493 P.2d 1259, *cert. denied,* 409 U. S. 847, 34 L. Ed. 2d 88, 93 S. Ct. 53, it is said:

"It may be added that quasi-judicial is a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of judicial nature." (p. 663)

In *Schulze v. Board of Education,* 221 Kan. 351, 559 P.2d 367, the foregoing principles again have been approved and applied.

In *Stephens v. Unified School District,* 218 Kan. 220, 546 P.2d 197, it is stated:

". . . Under what is referred to as the 'standard scope of review for administrative proceedings' . . . the issues to be determined are simply 'whether, *as a matter of law,* (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.' (*Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828, Syl. 1. Emphasis added.) Our administrative review cases state and restate that these are the only issues open to the court. [p. 231]

"A distinction must be made, however, between those functions of an administrative agency which are 'administrative' in nature and those which are judicial in nature in the sense that they could constitutionally have been entrusted to the courts in the first instance had the legislature so desired. This court had occasion to explore this distinction in depth in *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P.2d 966. . . . [p. 233]

"*Gawith* was subsequently applied in *Union Quarries, Inc. v. Board of County Commissioners,* 206 Kan. 268, 478 P.2d 181. There the issue was whether a determination of abandonment of a non-conforming use in a zoning case was legislative or judicial. Citing *Gawith,* the court found that 'abandonment' was a question traditionally dealt with by courts and that such a determination ' "declares and enforces liabilities as they stand on present or past facts" . . . and does not involve the formulation of policy normally classified as a legislative function. Such a determination is not a prospective endeavor, rather it looks back and is made on past facts, and therefore must be deemed a judicial function.' (*Id.* at 274.)" (pp. 234-235)

K.S.A. 19-212 is a statement of the general powers of a board of county commissioners. K.S.A. 28-167 provides that a board of county commissioners shall allow reasonable sums for assistants and deputies as may be necessary to properly expedite the business of the office of the sheriff. K.S.A. 28-824 directs that a board of county commissioners allow such reasonable sums for salaries and compensation of assistants and deputies as may be necessary to properly expedite the business of the several offices of the county. K.S.A. 28-168 directs that all salaries shall be paid out of the county general fund.

K.S.A. 1976 Supp. 79-2927 provides that each year the governing body of each taxing subdivision shall prepare a written budget properly itemized and classified by funds for the ensuing year. K.S.A. 1976 Supp. 79-2934 states that:

"The budget as approved and filed with the county clerk for each year shall constitute and shall hereafter be declared to be an appropriation for each fund, and the appropriation thus made shall not be used for any other purpose. . . ."

"No part of any fund shall be diverted to any other fund. . . ."

The meaning of the word "fund" is found in K.S.A. 1976 Supp. 79-2925(*b*) where is is provided that:

"Whenever the word 'fund' is used in this act it is intended to have reference to those funds which are authorized by statute to be established. 'Fund' is not intended to mean the individual budgeted items of a fund, but is intended to have reference to the total of such individual items."

There was no diversion of monies to another fund.

We are satisfied that under the powers granted to the board by K.S.A. 19-212, K.S.A. 28-167 and K.S.A. 28-824, the board had authority to order that operation of the traffic safety program be discontinued. Such consequences that may flow from its action, political or by reason of representations made to the project funding authority, were and are to be borne by the board.

Plaintiffs have contended that the substance of the board's action was the discharge of plaintiff Hohman. We find this to be in error. The board did not fire Hohman. The sheriff remained free to retain Hohman as a deputy sheriff. The board terminated the traffic safety program. There was no declaration and enforcement of liabilities standing on present or past facts. The board's action was a formulation of policy; looked to the future; and made a change of existing conditions by making a decision to be applied in the future. Thus, the board's action was legislative or administrative and not judicial or quasi-judicial.

Plaintiffs have failed to show that the action of the board was arbitrary or capricious or that it was not substantially supported by the evidence. Plaintiffs appear to have been afforded full opportunity in the trial court to make these showings and the record fails to establish that the trial court erred in its determination.

Upon review of the record, we conclude that the trial court correctly found that the defendant board acted neither arbitrarily nor capriciously, that its action is substantially supported by evidence and that its action was within the scope of its authority. On appeal plaintiffs have made no contention that the board's action was fraudulent.

The judgment is affirmed.

ABBOTT, J., not participating.