Peggy DITCH, Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS
Of the COUNTY OF SHAWNEE, KAN-
SAS, et al., Defendants.

Civ. A. No. 86–4212–S.

United States District Court,
D. Kansas.

Nov. 2, 1986.

Cathleen M. Reeder, Bryan, Lykins, Hejtmanek, Hulsey & Wulz, P.A., Topeka, Kan., for plaintiff.

Douglas F. Martin, Shawnee County Counselor, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for summary judgment. Plaintiff brought this employment discrimination case based on defendant Board of County Commissioners' abolition of the position of Secretary with the Shawnee County Civil Service Board, a job held by plaintiff until 1985. Defendants base their motion on absolute immunity and on the alleged failure by plaintiff to meet the jurisdictional prerequisites of her claims.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, — U.S. —, — – —, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, — U.S. —, — – —, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

The facts as gleaned from the briefs and affidavits of the parties and viewed in a light most favorable to plaintiff are as follows. Plaintiff began her employment with the Shawnee County Civil Service Board in 1983. Her classification was Secretary I, which was later re-classified as Secretary II. In 1984, plaintiff, a Democrat, ran for Clerk of Shawnee County against the incumbent, Patsy McDonald, a Republican. Plaintiff lost the election. Plaintiff asserts that in the 1984 election the political majority of defendant Board of County Commissioners changed from Democratic to Republican. Plaintiff continued

in her job as Secretary II and received good performance ratings.

On April 9, 1985, the defendant Board of County Commissioners voted, by resolution, to abolish the positions of E.E.O. Director and Secretary II with the Shawnee County Civil Service Board. In a separate resolution on the same day, this defendant voted to create the position of E.E.O./Civil Service Specialist to perform the combined duties of the two abolished positions. These resolutions were ostensibly based on budgetary conditions. Defendants Kingman and Hanna were sitting on the defendant Board of Shawnee County Commissioners at the time of these resolutions, and they voted in favor of the resolutions. Plaintiff applied for the new combined position, but it was filled by the former E.E.O. Director. Plaintiff later applied for several other positions with Shawnee County, but was denied employment. Plaintiff claims that defendants Kingman, Hanna, Wells, Hill and Ensley prevented her from obtaining further employment with the County.

On September 3, 1985, plaintiff filed a claim for age discrimination with the Kansas Commission on Civil Rights against Shawnee County and other individuals. Plaintiff is presently 57 years old. Although there is some indication from the record that the plaintiff attempted to have a claim filed with the Equal Employment Opportunity Commission (E.E.O.C.), the court could find no definitive proof record of such a filing. Her complaint in the present lawsuit was filed on July 3, 1986.

In her complaint, plaintiff stated claims under the First Amendment to the United States Constitution (brought pursuant to 42 U.S.C. §§ 1983 and 1985), the Age Discrimination in Employment Act (ADEA) (29 U.S.C. §§ 621–634), and the Kansas Age Discrimination in Employment Act (KADEA) (K.S.A. 44–1111 to –1119). Her claims against the individual defendants are based on decisions arising from their respective offices: Kingman and Hanna (Shawnee County Commissioners), Charles Wells (Director of Human Resources of Shawnee County), Wayne Hill (Superin-tendent of Maintenance for Shawnee County), and Theodore Ensley (head of Department of Parks and Recreation for Shawnee County). The latter two defendants were brought in based on their departments' refusal to hire plaintiff after she was terminated by the Civil Service Board.

## I. LEGISLATIVE IMMUNITY

First, defendants Hanna and Kingman assert absolute immunity as to the claims based on the Civil Rights statutes, 42 U.S.C. §§ 1983, 1985, and the constitutional claims. Without tracing the entire history of this area of law, it is relevant to note that in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Supreme Court extended the doctrine of absolute immunity to regional legislators, a protection previously enjoyed only by federal and state legislators. The Court held that to the extent that the individual members of the regional planning agency were acting in a legislative capacity, they were entitled to absolute immunity from federal damages liability. The Court expressly avoided deciding "[w]hether individuals performing legislative functions at the purely local level, as opposed to the regional level, should be afforded absolute immunity from federal damages claims." *Id.* at 404 n. 26, 99 S.Ct. at 1179 n. 26. The Supreme Court has not subsequently addressed this issue. The courts of appeals have done so, however, and it appears from both parties' briefs that the overwhelming majority afford absolute immunity to local legislators who act in a legislative capacity. See *Aitchison v. Raffiani*, 708 F.2d 96, 98 (3d Cir.1983) and cases cited therein. Although the Tenth Circuit has not embraced the issue of immunity for local legislators exercising their legislative function, this court is certain that the Tenth Circuit Court would hold that legislative functions require absolute immunity, *see Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982), and that the rationale of these Supreme Court cases

extends to local, regional, state and federal legislators.

■ The issue of immunity thus depends on the function that was performed by these two defendants. If it was legislative, they are entitled to absolute protection in their personal capacity. If administrative, then the test for qualified immunity applies. The court has been unable to find a Tenth Circuit decision directly addressing this issue.*

A recent Third Circuit decision sheds light on the question of legislative versus administrative conduct. In *Abraham v. Pekarski*, 728 F.2d 167 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984), the court made several relevant observations. First, the court found that "[t]he fact that the action complained of resulted from a vote of the members of the governing body is not dispositive, for in the exercise of non-legislative powers all corporate bodies require a vote of their governing bodies." 728 F.2d at 174. Second, the court also indicated that the issue of whether a governing body's actions are legislative, administrative, or managerial is a question of state law. In the *Abraham* case, the plaintiff had served as Director of Roads and Public Property. The township board of commissioners discharged him without a hearing and the plaintiff sued for damages. The court found that under Pennsylvania law, the decision to hire or fire employees was a managerial rather than legislative function. In arriving at this conclusion, the court relied both on the township's failure to act by adoption of an ordinance (under state law the township's legislative powers had to be exercised through adoption of ordinances), and on an ordinance that described the hiring and firing of township employees as a non-legislative function. *Id.* at 175.

It should be noted, however, that Judge Sloviter's concurring opinion in *Abraham*

recognized that the majority's findings on the issues of absolute immunity were *obiter dictum*, since that issue was not raised in the district court. Moreover, Judge Sloviter cast doubt on the majority's assertion that the decision to fire the plaintiff was, as a matter of law, managerial. *Id.* at 175–76 (Sloviter, J., dissenting).

In an earlier decision, the Third Circuit had dealt directly with a situation in which a city council abolished the position of assistant building inspector, alleging aims of efficiency and economy. In *Aitchison v. Raffiani*, 708 F.2d 96 (3d Cir.1983), the court held that the members of the council were absolutely immune from damage suits under 42 U.S.C. § 1983 when acting in a legislative capacity. *Id.* at 99. Because the court in fact found absolute immunity available, the inescapable conclusion is that the court believed the elimination of a job title is a legislative act, although the court never expressly so stated. The combination of these two Third Circuit decisions supports the proposition that a county ordinance abolishing two job titles and establishing the existence and duties of a new position is the result of legislative, and not managerial/administrative, action.

The First Circuit has a different view of the correct approach in a case such as the present one. In *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir.1984), the court relied upon two tests taken from *Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427, 1510–11 (1978) instead of turning to state law to decide the issue of legislative versus administrative/managerial conduct. The *Cutting* court stated:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are 'legislative facts', such as 'generalizations concerning a policy or state of affairs', then the decision is legislative. If the facts used in the decisionmaking are more specific,

---

\* Defendants are misguided in relying on *Miller v. City of Mission*, 705 F.2d 368 (10th Cir.1983) as authority for whether absolute immunity is available. The *Miller* court never addressed this question. The issue before the court concerned qualified immunity and therefore is not relevant to the present discussion.

such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the 'particularity of the impact of the state of action.' If the action involves establishment of a general policy, it is legislative; if the action 'single[s] out specifiable individuals and affect[s] them differently from others', it is administrative.

*Id.* at 261.

Interestingly, under both the Third and First Circuits' approaches, one Kansas Court of Appeals decision would be dispositive. In *Gonser v. Board of County Commissioners,* 1 Kan.App.2d 57, 562 P.2d 102 (1977), a county board of commissioners had terminated a county traffic safety program, which had the ultimate effect of terminating plaintiff's job as traffic safety officer. The court of appeals endeavored to determine whether the board's action was quasi-judicial as opposed to administrative/legislative. The court stated the following:

> Plaintiffs have contended that the substance of the board's action was the discharge of plaintiff Hohman. We find this to be in error. The board did not fire Hohman. The sheriff remained free to retain Hohman as a deputy sheriff. The board terminated the traffic safety program. There was no declaration and enforcement of liabilities standing on present or past facts. The board's action was a formulation of policy; looked to the future; and made a change of existing conditions by making a decision to be applied in the future. Thus, the board's action was legislative or administrative and not judicial or quasi-judicial.

*Id.* at 63, 562 P.2d at 108. Although the court purportedly did not decide whether the conduct was legislative or administrative, the court's conclusion quoted above was based on a United States Supreme Court opinion's test for determining whether certain conduct was *legislative* or *judicial. See id.* at 61, 562 P.2d at 106 (quoting *Prentise v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed.

150 (1908)). Thus, it follows that the Kansas Court of Appeals would consider the conduct in the present case as legislative. This would be the order of the court if the Third Circuit view were adopted. Moreover, the test used by the First Circuit relied mainly upon whether the particular acts were policy oriented or whether they were situation-specific. Again, the Kansas Court of Appeals decision indicated that elimination of a program or job title "was a formulation of policy."

The court finds that the Third Circuit's approach is unsuitable in the present case. It would allow the individual states to dictate immunity for their officials in federal civil rights cases. The result of such a ruling is aptly demonstrated by defendants' brief:

> [The Kansas Supreme Court has] set forth the principle that the extent of legislative power held by the Kansas Legislature and accordingly county boards, is only limited by the Kansas Constitution, thus providing for a broad and extensive grant of legislative authority in these bodies. This broad legislative authority was granted to the Board, which it exercised in passing a resolution to combine the two jobs.

It can hardly be doubted that the United States Constitution and the laws of Congress can and do limit the extent of power held by the state legislative bodies, as the Civil Rights statutes demonstrate. If the law were as the defendants argue, the states could effectively diminish the scope of the Civil Rights statutes and tie the federal courts' hands in enforcing the laws against discriminatory practices.

Although the First Circuit's "tests" are somewhat ambiguous, they permit more discretion in applying the federal statutes involved in this case. However, strict adherence even to these broad standards may not always provide the correct answer. As the Ninth Circuit has noted, "For instance, Congress, as well as many state and local legislatures, may enact private, or other, bills that affect an individual or a narrowly defined group of individuals. We

cannot say that such activities are not legislative." *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 579 (9th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). That court stated that "[w]hether actions ... are, in law and fact, an exercise of legislative power depends not on their form but upon 'whether they contain matter which is properly to be regarded as legislative in its character and effect.'" *Id.* at 580 (quoting *INS v. Chadha,* 462 U.S. 919, 952, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983)) (citation omitted).

■ As can be seen, this area of the law is imprecise and subject to ad hoc decisionmaking. The facts of this case fall in the gray area between legislative and managerial conduct. However, the decisions seem to be in accord with the proposition that the elimination of two job titles and the creation and delineation of a new, combined position is a legislative act. The *Aitchison* decision unambiguously supports this. Most district courts have also held such conduct to be legislative. *See Skrocki v. Caltabiano,* 568 F.Supp. 703, 706 (E.D.Pa. 1983) ("[T]he decision to abolish a particular municipal post is one deserving of absolute, legislative immunity."); *Goldberg v. Village of Spring Valley,* 538 F.Supp. 646 (S.D.N.Y.1982); *Wells v. Hutchinson,* 499 F.Supp. 174, 185 (E.D.Tex.1980). *See also Gonser v. Board of County Commissioners,* 1 Kan.App.2d 57, 562 P.2d 102 (1977). Likewise, most courts hold that a decision to hire or fire a specific individual for a specific position is administrative or managerial. *See Walker v. Jones,* 733 F.2d 923 (D.C.Cir.1984), cert. denied, 469 U.S. 1036 (1984); *Abraham v. Pekarski,* 728 F.2d 167, 175 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Kuchka v. Kile,* 634 F.Supp. 502, 508 (M.D. Pa.1985); *Coffey v. Quinn,* 578 F.Supp. 1464, 1467 (N.D.Ill.1983) ( [D]efendants applied some local policy or ordinance specifically to [plaintiff's] case."); *Skrocki,* 568 F.Supp. at 706 (After holding that abolishing a municipal position is a legislative act, the court stated, "On the other hand, the decision to hire or fire a municipal employ-

ee, even when made by a 'legislative body', is administrative in nature and deserves only qualified immunity."); *Detz v. Hoover,* 539 F.Supp. 532, 534 (E.D.Pa.1982) ("[W]e believe that a municipality's employment decisions, whether they regard *hiring, firing, or a failure to reinstate,* are essentially *administrative* in nature, this notwithstanding the fact that a legislative body is the responsible decisionmaker.") (emphasis added). *But see Goldberg,* 538 F.Supp. at 650 (holding that "approval of the appointments of individuals to positions that were performed by plaintiffs" was also legislative). The court finds that defendants Hanna and Kingman's conduct in voting for the two resolutions concerning the E.E.O. position was legislative in nature, thus entitling them to absolute personal immunity.

■ The distinction between a resolution dealing with the restructuring of job positions with a department of government, (*i.e.,* abolition and establishment of *employment positions* ) versus the hiring or firing of particular *employees* represents a fine line, though one this court feels compelled to draw. The former implicates policy decisionmaking, such as exercising budgetary restraint or initiating new and innovative ways to handle certain offices or departments more efficiently and competently. Although, as in the present case, the effect of implementing this policy meant the discharge of a particular employee, the determination of which person would fill the new position of E.E.O./Civil Service Specialist was not part of the original resolutions. Also, these resolutions did not preclude the discharged employee from applying for other positions with the county. The decision as to which employees to hire or fire, however, is purely a managerial/administrative act, and the county officials responsible for dealing with particular employees or potential employees enjoy only qualified immunity. The court therefore finds that defendants Hanna and Kingman's motion for summary judgment should be granted as to any cause of action based on their voting to abolish the Secre-

tary II and E.E.O. Director positions and to establish the E.E.O./Civil Service Specialist position. However, plaintiff's cause of actions based on these two defendants' participation in the actual decisions to discharge plaintiff or to not rehire plaintiff in other positions with the county remain, and to the extent that defendants' motions are based on such conduct, their motion for summary judgment is denied.

## II. JURISDICTION UNDER THE ADEA

### A. *ADEA Definition of Employer.*

Defendants deny individual liability under the federal ADEA. They argue that the ADEA's reach is limited to employers. 29 U.S.C. § 623(a). The definition of employer includes persons engaged in an industry affecting commerce, any agent of such persons, and a state or political subdivision of a state. 29 U.S.C. § 630(b). The defendants argue that this definition does not include *agents of political subdivisions,* thus leaving the Board of Commissioners as the only party liable under the ADEA. *See McCroan v. Bailey,* 543 F.Supp. 1201, 1211 (S.D.Ga.1982) ("Inasmuch as the agents referred to in section 630(b) are agents of a "person" . . ., which excludes states, it appears to the Court that [the individual defendants] cannot be sued in their individual capacities and are, therefore, not personally liable.") The plaintiff urges the court to adopt a liberal construction of 29 U.S.C. § 630 and hold the individuals personally liable. The plaintiff relies on several cases that have applied interpretations of Title VII's definition of employer to ADEA actions. Those cases generally hold the following:

> [There is] no compelling reason to distinguish between the Title VII definition of 'employer' and the ADEA definition of 'employer'.... In view of the common purpose shared by Title VII and the ADEA, *i.e.,* the elimination of discrimination from the workplace; and the fact that the ADEA is remedial in nature and thus should be liberally construed ..., [there] is no reason why comparable pro-

visions pertaining to the definition of 'employer' should be construed differently.

*Coffin v. South Carolina Dep't of Social Services,* 562 F.Supp. 579, 589–90 (D.S.C. 1983) (citation omitted). *See also Goodman v. Board of Trustees,* 498 F.Supp. 1329 (N.D.Ill.1980).

■ Unlike the cases cited by plaintiff, this court finds a compelling reason for releasing the individual defendants from liability under the ADEA. Title VII's definition of employer includes a person engaged in an industry affecting commerce *and any agent of such a person.* 42 U.S.C. § 2000e(b). Title VII's definition of person includes political subdivisions. *Id.* at § 2000e(a). Therefore, it is no great revelation to hold that agents of political subdivisions, such as the county commissioners in this case, can be held personally liable as employers under the statute. In fact, such a holding makes perfect sense and is mandated by the language of the statute. However, to find no distinction between the Title VII and the ADEA definitions of employer simply because of the policy behind the statutes borders on judicial activism in its plainest sense. In enacting the ADEA, Congress explicitly excluded states and their political subdivisions from the definition of person, opting rather to include them as a separate and distinct category of employer. Within one sentence, Congress established the separate and distinct liability of (1) agents of persons and (2) states and political subdivisions. Congress made no provision for agents of states and political subdivisions. It would have only required the insertion of the short phrase "and their agents" in 29 U.S.C. § 630(b)(2) to express Congress' intent to hold individuals such as these defendants liable for age discrimination. If ever the maxim *expressio unius est exclusio alterius* is applicable, it is this situation. This court cannot invalidate the express terms of a federal statute under the guise of applying a policy of liberal construction, regardless of the ultimate ends that would be furthered. The court there-

fore finds that defendants Kingman, Hanna, Wells, Hill and Ensley's motion for summary judgment on the ADEA claim should be granted.

### B. *Prerequisite Filing of Complaint with E.E.O.C.*

■ The only remaining defendant under the ADEA count is the Board of Commissioners. This defendant first claims that because the plaintiff did not name the Board in her complaint filed with the E.E.O.C., it cannot be held liable for discrimination. 29 U.S.C. § 626(d). Even if this section contains such a requirement, the court finds that the Board of County Commissioners was included in the original complaint, even though the actual party appearing in the complaint was denominated "County of Shawnee." "The only manner in which [the] County can act is through its commissioners ...; hence, a suit against the commissioners ... is actually a suit against [the] County itself." *Wells v. Hutchinson*, 499 F.Supp. 174, 186 (E.D. Tex.1980). Plaintiff correctly notes that the powers of a Kansas county as a political and corporate body are exercised by a Board of County Commissioners. K.S.A. 19–103. Moreover, there is sufficient evidence for the purposes of summary judgment that the board of county commissioners had the quality of notice of plaintiff's complaint that the ADEA was intended to provide. The court also finds that the record is insufficient to determine (1) whether the E.E.O.C. filing requirements have been met and (2) the extent of plaintiff's diligence in pursuing her claim with the E.E.O.C. In particular, the disclosable documents from the Kansas Commission on Civil Rights should shed a great deal of light on this issue. These documents were not yet available at the time of the filing of plaintiff's response. Furthermore, the defendant has failed to carry its burden of production on this issue. The court therefore finds that defendant Board of County Commissioners' motion for summary judgment on the ADEA count should be denied. However, at such time as the record becomes developed to the point that the parties can fully brief this issue, the court would entertain a renewed motion for summary judgment.

### III. KADEA COUNT

■ First, as the defendants correctly note, the Kansas Age Discrimination in Employment Act (KADEA) incorporates virtually the same definition of employer as the ADEA. Therefore, only the defendant Board of Commissioners of Shawnee County can be held liable for age discrimination under the KADEA. Second, defendants again claim that because plaintiff's claim filed with the KCCR named only the "County of Shawnee" and not the Board, the plaintiff has failed to meet the jurisdictional requirements of the KADEA. As earlier discussed, plaintiff sufficiently notified the Board of her suit, and this ground for objection has no merit. Third, defendant Board of County Commissioners contends that the KADEA claim should be governed by a one-year statute of limitations, K.S.A. 60–514(3). This argument is based on defendant's mistaken belief that violation of the KADEA is punishable by a prison sentence and/or a fine and is thus a "statute with a penalty." Defendant's argument relies on a careless reading of the statute. In K.S.A. 44–1117, a prison sentence of not more than one year or fine of not more than $500 is provided for willfully interfering with the Kansas Civil Rights Commission or willfully violating any of its orders. No penalty is given for simple violation of the KADEA. Therefore, the most applicable Kansas statute of limitation is either K.S.A. 60–512 (three-year statute for actions upon liability created by statute) or K.S.A. 60–513(a)(4) (two-year statute for actions for injury to the rights of another, not arising on contract, and not otherwise enumerated). These are the two statutes generally applied to civil rights and Title VII cases. Because these latter causes of action are similar to the KADEA in purpose and application, they would be the most appropriate to govern the present case. Although an apparent controversy once existed as to which of the two stat-

utes to apply, *compare Garcia v. University of Kansas,* 702 F.2d 849, 850 (10th Cir. 1983) (applying three-year statute) *with Sullivan v. LaMunyon,* 572 F.Supp. 753, 756–63 (D.Kan.1983) (expressly disputing validity of *Garcia* and applying two-year statute), it appears that the issue was decided in *Garcia v. Wilson,* 731 F.2d 640, 651 (10th Cir.1984), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), in which the court held that these causes of action should be characterized as actions for injury to personal rights. The proper statute of limitation would thus be K.S.A. 60–513(a)(4). This court need not speculate on the state of the law because plaintiff has filed a timely lawsuit under either statute. Defendant's arguments based on the statute of limitations are thus without merit.

■ Defendant's argument based on the failure of plaintiff to follow the procedural requirements for appealing a decision of the KCCR has considerably more merit. Sections 44–1115, 44–1010, and 44–1011 of the Kansas Statutes Annotated, when read together, rest exclusive jurisdiction of plaintiff's KADEA claim in the state district courts. Plaintiff should have filed an application for rehearing within ten days of the KCCR's decision of April 17, 1986, which found no probable cause for a claim of age discrimination. Any appeal from a denial of rehearing would have to be made to a Kansas district court. Accordingly, plaintiff has failed to follow the required administrative appeal procedures. The court finds that summary judgment should be granted in favor of all defendants on plaintiff's claim under the KADEA.

## IV. CONSTITUTIONAL CLAIMS

■ Defendants argue that because plaintiff could bring her claims against defendant Board of County Commissioners under 42 U.S.C. §§ 1983 and 1985, she is not permitted to pursue a cause of action directly under the Constitution. Contrary to defendants' motion, plaintiff did invoke sections 1983 and 1985 in her complaint. However, there is no *Bivens*-type action for violation of the Constitution available to plaintiff. *Bivens* affords a cause of action directly under the Constitution only for violations committed by the federal government. Damage suits against the state must be brought pursuant to the civil rights statutes. *See Lee v. Wyandotte Co.,* 586 F.Supp. 236 (D.Kan.1984); *Howard v. Topeka-Shawnee County Metropolitan Planning Commission,* 578 F.Supp. 534 (D.Kan.1983). The court therefore finds that defendants' motion for summary judgment on plaintiff's claims brought directly under the Constitution should be granted.

IT IS BY THE COURT THEREFORE ORDERED that defendants Hanna and Kingman's motion for summary judgment based on legislative immunity as to plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 be granted, as those motions relate to the resolutions concerning abolishing and creating job positions with Shawnee County. IT IS FURTHER ORDERED that defendants Hanna and Kingman's motion for summary judgment be denied insofar as plaintiff's sections 1983 and 1985 claims relate to decisions to discharge and/or not rehire plaintiff. IT IS FURTHER ORDERED that defendants Hanna, Kingman, Wells, Hill, and Ensley's motion for summary judgment as to plaintiff's ADEA claim be granted. IT IS FURTHER ORDERED that defendant Board of County Commissioners' motion for summary judgment as to plaintiff's ADEA claim be denied. IT IS FURTHER ORDERED that all defendants' motion for summary judgment on the KADEA claims be granted. IT IS FURTHER ORDERED that all defendants' motion for summary judgment on plaintiff's claims based solely on the United States Constitution be granted.