937 F.Supp. 608 (1996)
Bennie E. JENKINS, Plaintiff,
v.
The BOARD OF EDUCATION OF the HOUSTON INDEPENDENT SCHOOL DISTRICT, Dr. Rod Paige, Mr. Leonard Strum, Mr. Ron Franklin, Ms. Paula Arnold, Dr. Cathy Mincberg, Ms. Olga Gallegos, Ms. Esther Campos, Dr. Don McAdams, Ms. Joyce Moss-Clay, Mr. Bob Lucas and Mr. Robert Moore, Defendants.
Civil Action No. H-96-cv-10.
United States District Court, S.D. Texas, Houston Division.
August 22, 1996.
*609 Carnegie H. Mims, Jr., Jefferson & Mims, Houston, TX, for plaintiff.
Jeffrey J. Horner, Bracewell & Patterson, Houston, TX, for defendants.

ORDER OF PARTIAL DISMISSAL
HUGHES, District Judge.
1. This court adopts the memorandum and recommendation of the United States Magistrate Judge signed July 25, 1996.
2. Defendants Dr. Rod Paige, Leonard Sturm, Ron Franklin, Paula Arnold, Dr. Cathy Mincberg, Olga Gallegos, Esther Campos, Dr. Don McAdams, Joyce Moss-Clay, Bob Lucas, and Robert Moore are dismissed as defendants in this case.

MEMORANDUM AND RECOMMENDATION
CRONE, United States Magistrate Judge.
Pending before the court is defendant Houston Independent School District (HISD) and individual defendants Dr. Rod Paige, Leonard Sturm, Ron Franklin, Paula Arnold, Dr. Cathy Mincberg, Olga Gallegos, Esther Campos, Dr. Don McAdams, Joyce Moss-Clay, Bob Lucas, and Robert Moore's (collectively HISD defendants) motion for partial dismissal for failure to state a claim for which relief can be granted (# 11). The HISD defendants request dismissal of this claim against them in both their individual and official capacities.
Having reviewed the pending motion, the submissions of the parties, the pleadings, and *610 the applicable law, this court recommends that the motion be granted.

1. Background

In 1986, Congress passed the Asbestos Hazardous Emergency Response Act (AHERA) to correct the problems of asbestos in school buildings. The AHERA mandated that all school districts inspect each school building and adopt "the least burdensome methods which protect human health and the environment."
In response to this federal mandate, HISD created the Bureau of Hazardous Materials (later changed to the Environmental Affairs Department) and appointed plaintiff Bennie E. Jenkins as the first Executive Director. As part of his duties, Jenkins was responsible for completing re-inspections of the schools for asbestos materials and for supervising licensed asbestos inspectors who were performing the actual re-inspections. Jenkins was also responsible for scheduling and maintaining the schedule of re-inspections. In addition, Jenkins was appointed as the designated agent for complying with reporting requirements of AHERA.
Jenkins's immediate supervisor was defendant Bob Lucas, an Assistant Superintendent of HISD. Lucas was supervised by defendant Joyce Moss-Clay, Director or Manager of Field Management Operations of HISD. Moss-Clay reported to defendant Leonard Sturm, Deputy Superintendent of Finance. Sturm, in turn, reported to the General Superintendent of HISD, Dr. Frank Petruzielo.
According to Jenkins, on Friday, August 27, 1993, he was contacted by McBon Environmental and Construction Company (McBon), a local asbestos removal contractor, and informed that the New York City School System was experiencing a crisis. Jenkins contends that over 1,000 schools in New York City were closed down due to faulty reinspections of asbestos materials and the New York City School System had placed an emergency call for additional asbestos inspectors. Jenkins maintains that the schools could not be reopened until inspections were redone. Thus, Jenkins volunteered himself and requested volunteers from his staff to go with him to assist the New York City asbestos inspectors. According to Jenkins, he felt it was part of his duty to discover what the New York City inspectors had done which caused the closing of over 1,000 schools. Jenkins alleges that in view of the New York City crisis and to ascertain whether the inspections in Houston were being properly performed, he suspended HISD's re-inspection schedule.
McBon made arrangements for Jenkins and his staff to depart Houston for New York City on Tuesday, August 31, 1993. On Monday, August 30, 1993, McBon allegedly notified Jenkins that it was necessary for his group to leave that day. Jenkins asserts that before he left the office to go to the airport, he attempted to inform his supervisor, Lucas, of the crisis and his decision to travel to New York City to find out what went wrong with the inspections. Jenkins contends, however, that Lucas was in an agenda meeting and unavailable to meet with him. Jenkins asserts that it was his belief that it was mandatory for him to go and that Lucas would approve his decision. Therefore, Jenkins left the office without discussing the matter with Lucas. At 6:00 p.m. on Monday, August 30, 1993, Jenkins and thirteen members of his staff departed for New York City without first discussing the matter with Lucas or any of his superiors.
Jenkins called Lucas on Tuesday morning, August 31, 1993, to inform him of the alleged crisis and of his decision to go to New York City with his staff. According to Jenkins, Lucas stated that he had heard that Jenkins had resigned and had accepted an offer of employment with McBon. Jenkins alleges that he assured Lucas that he had not resigned and would return to Houston as soon as he found out what the problem was with the re-inspections of the New York City schools. After learning that the trip had not been authorized by Lucas and their jobs were in jeopardy, all but one of Jenkins's staff members returned to Houston on Thursday, September 2, 1993. The remaining staff member returned to Houston on Saturday, September 4, 1993.
According to Jenkins, he had been experiencing sleepiness, dizziness, and disorientation *611 during the four-day period from Friday, August 27 to Monday, August 30, 1993. Jenkins, a diabetic, contends that he thought these difficulties were due to low blood sugar. Thus, on the way to the airport, Jenkins allegedly went to a pharmacy and renewed his diabetic medication prescription. Jenkins claims that he did not accompany his staff back to Houston on September 2 because of his illness. On September 3, 1993, he suffered a nervous breakdown and was hospitalized in New York City. Jenkins was released from the hospital and returned to Houston on Monday, September 7, 1993. He immediately was placed under the care of Dr. Jan J. Poage, a Houston psychiatrist, who recommended that Jenkins take a medical leave of absence.
Jenkins's trip was investigated by defendant Robert Moore, Assistant Superintendent of Financial Audit and the assistant to Sturm. Based on Moore's investigation, on October 25, 1993, the General Superintendent of HISD at that time, Petruzielo, recommended that Jenkins be terminated. On February 24, 1994, and March 10 and 11, 1994, a due process termination hearing was conducted before Hearing Officer, Ann Vevier Lockwood. On May 13, 1994, the Hearing Officer issued her written findings, which upheld the administration's recommendation to terminate Jenkins. Jenkins appealed the Hearing Officer's decision to the HISD Board of Education. While his appeal was pending, Jenkins alleges that he suffered another nervous breakdown and was hospitalized in Houston. On May 27, 1994, Jenkins was diagnosed by psychiatrist Dr. Mark Jacobs as having manic-depression or bipolar disorder, from which he allegedly suffered before, during, and after his trip to New York City. Jacobs mailed a copy of this diagnosis to Sturm. Jenkins maintains that he informed Lucas and Sturm of his medical disability and requested accommodation for his mental illness. Jenkins's request was denied.
On June 3, 1994, Jenkins filed an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging that the defendants were violating the Americans with Disabilities Act (ADA) by refusing to take into consideration his medical disability.
In August 1994, Jenkins allegedly attempted to introduce this medical evidence to the Board of Education at his appeal hearing. Jenkins contends, however, that the Board of Education would not consider any evidence not included in the record before the Hearing Officer. On August 25, 1994, the Board formally terminated Jenkins's employment.
The EEOC issued Jenkins a right to sue letter on September 28, 1995, and on January 3, 1996, Jenkins filed his original complaint, pro se, in this court alleging discrimination on the basis of a medical disability. Jenkins subsequently amended his complaint alleging that the defendants discriminated against him in violation of the ADA, 42 U.S.C. § 12101, et seq.

2. Analysis

A. The Standard for Dismissal under Rule 12(b)(6)

A motion to dismiss under FED. R.CIV.P. 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or the merits of the case. In ruling on a motion to dismiss, the court must take the plaintiff's allegations as true, view them in a light most favorable to him, and draw all inferences in his favor. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); see also Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc., 30 F.3d 627, 629 (5th Cir.1994); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284-85 (5th Cir. 1993). The court may not look beyond the four corners of the plaintiff's pleadings. McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir.1992). Thus, the motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957): Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir.1995); U.S. Abatement Corp. v. *612 Mobil Exploration & Producing U.S., Inc., 39 F.3d 556, 559 (5th Cir.1994); ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n, 36 F.3d 409, 410 (5th Cir.1994); McCartney, 970 F.2d at 47.

B. Individual Liability under the ADA

The HISD defendants request dismissal of this claim against them in both their individual and official capacities. The ADA was enacted by Congress "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." United States v. Morvant, 843 F.Supp. 1092, 1094 (E.D.La. 1994) (citing 42 U.S.C. § 12101(b)). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).
"Employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees ..., and any agent of such person...." 42 U.S.C. § 12111(5)(A); EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1279 (7th Cir.1995). "The ADA's definition of `employer' mirrors the definitions of `employer' in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act (ADEA)." Id. at 1279-80 (citing 42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b)); see Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir.1996); Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995). In addition, the term "person" under the ADA has the same meaning as in Title VII. Thompson v. City of Arlington, 838 F.Supp. 1137, 1151 (N.D.Tex.1993). Moreover, the ADA provides that it is to be enforced in the same manner as Title VII. Id. (citing 42 U.S.C. § 12117); see generally Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir.1995). Therefore, "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably." AIC Sec. Investigations, Ltd., 55 F.3d at 1280; Williams, 72 F.3d at 553-54; Grassmuck v. Chinn Enters., Inc., No. 95 C 3729, 1996 WL 400046, at *4 n. 1 (N.D.Ill. July 15, 1996).

1. Individual Capacity

It is well settled in the Fifth Circuit that individual supervisors cannot be held personally liable under Title VII, as they are not "employers" as that term is defined in Title VII. See Garcia v. Elf Atochem N. Am., 28 F.3d 446, 451 n. 2 (5th Cir.1994); Grant v. Lone Star Co., 21 F.3d 649, 652-53 (5th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); Clanton v. Orleans Parish Sch. Bd., 649 F.2d 1084, 1099 (5th Cir.1981). Similarly, a Title VII plaintiff may not recover against a public employee in his individual capacity. Harvey v. Blake, 913 F.2d 226, 227-28 (5th Cir.1990). Individual supervisors, likewise, may not be held liable in their individual capacities for violations of the ADEA. Rutland v. Office of Attorney Gen., State of Miss., 851 F.Supp. 793, 802-03 (S.D.Miss.1994), aff'd sub. nom., Rutland v. Moore, 54 F.3d 226 (5th Cir.1995); see, e.g., Kizer v. Curators of the Univ. of Mo., 816 F.Supp. 548, 550 (E.D.Mo.1993); Kauffman v. Kent State Univ., 815 F.Supp. 1077, 1081-82 (N.D.Ohio 1993), aff'd, 21 F.3d 428 (6th Cir.1994); Wanner v. State of Kan., 766 F.Supp. 1005, 1006-07 (D.Kan.1991); Young v. Sedgwick County, 660 F.Supp. 918, 924 (D.Kan.1987); Price v. County of Erie, 654 F.Supp. 1206, 1207 (W.D.N.Y.1987); Ditch v. Board of County Comm'r of Shawnee County, 650 F.Supp. 1245, 1251 (D.Kan.1986), modified on other grounds, 669 F.Supp. 1553 (D.Kan.1987); McCroan v. Bailey, 543 F.Supp. 1201, 1210-11 (S.D.Ga.1982).
In Thompson, the court dismissed the plaintiff's ADA claim against the individual defendants stating that "[t]he law under Title VII is clear that individuals may be sued only in their official capacities, as agents of the offending employer." 838 F.Supp. at 1151 (citing Harvey, 913 F.2d at 227-28); see Miller v. Giglio Distrib. Co., 899 F.Supp. 318, 319 (E.D.Tex.1995). "Only when a public official is working in his official capacity can the official be an agent of the government." Thompson, 838 F.Supp. at 1151. The Seventh Circuit explained in AIC Sec. Investigations, *613 Ltd. that the "and any agent" language contained in the definition of "employer" in the ADA was to ensure that courts would impose respondeat superior liability upon employers for the acts of their agents. 55 F.3d at 1281; see Mason, 82 F.3d at 1009; Williams, 72 F.3d at 553. Similarly, the Fifth Circuit, in Grant, observed that the purpose of the "agent" provision in § 2000e(b) was to incorporate respondeat superior liability into Title VII. Grant, 21 F.3d at 652. Hence, the "and any agent" language does not represent an independent means of creating individual liability.
Applying this rationale to Jenkins's claims against the individual defendants in this case, it is apparent that they may not be held personally liable under the ADA because they do not fall within the statutory definition of an employer. See Mason, 82 F.3d at 1009; AIC Sec. Investigations, Ltd., 55 F.3d at 1282; Czupih v. Card Pak, Inc., 916 F.Supp. 687, 690-91 (N.D.Ohio 1996); Duprey v. Prudential Ins. Co. of Am., 910 F.Supp. 879, 884 (N.D.N.Y.1996); Thompson, 838 F.Supp. at 1151. Accordingly, Jenkins's ADA claims against the HISD defendants in their individual capacities should be dismissed for failure to state a claim upon which relief can be granted.

2. Official Capacity

The HISD defendants also request dismissal of Jenkins's claim against them in their official capacities. The HISD defendants contend that such claims against them would be redundant due to the presence of HISD as a named defendant. As noted by the United States Supreme Court in a civil rights case brought under 42 U.S.C. § 1983, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 166, 105 S.Ct. at 3105. As the court explained, "It is not a suit against the official personally, for the real party in interest is the entity." Id. Therefore, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look back to the government entity itself." Id. In a footnote, the court pointed out, "There is no longer a need to bring official-capacity actions against local government officials, for under Monell ... local government units can be sued directly for damages and injunctive or declaratory relief." Id. at 167 n. 14, 105 S.Ct. at 3106 n. 14. Two district court opinions from Pennsylvania discuss the individual/official capacity distinction as applied to Title VII and ADA claims, explaining that the official capacity suit originated due to the "color of law" requirement in § 1983. See Clarke v. Whitney, 907 F.Supp. 893, 895 (E.D.Pa.1995) (citing Doe v. William Shapiro, Esquire, P.C., 852 F.Supp. 1246, 1252-53 (E.D.Pa.1994)). The courts found that "[b]ecause neither Title VII nor the ADA have any such requirement ... the individual/official capacity dichotomy was `a distinction without basis in the law.'" Id. (quoting Doe, 852 F.Supp. at 1253).
Therefore, because a suit against a public employee in his or her official capacity is simply another way to sue the public entity, Jenkins cannot show that he would be prejudiced by the dismissal of the individual HISD defendants from this case in their official capacities, as HISD is already a defendant. See Clark, 907 F.Supp. at 895 (citing Graham, 473 U.S. at 165, 105 S.Ct. at 3104-05). Under these circumstances, Jenkins's claims against the HISD defendants in their official capacities should be dismissed, as their presence in this case is merely redundant.

C. Local Rules

The Local Rules of the United States District Court for the Southern District of Texas regulate civil pretrial motion practice in this court. Specifically, Local Rule 6(E) provides that a failure to respond to a motion will be taken as a representation of no opposition. In this case, the defendants filed their motion for partial dismissal on May 13, 1996. As of today, over two months later, the plaintiff has not responded to the defendants' motion. *614 Therefore, under Local Rule 6(E), the defendants' motion for partial dismissal is deemed to be unopposed. Unopposed motions are routinely granted, and this court can discern no reason for failing to grant the current motion.

3. Conclusion

This court recommends that HISD and the HISD defendants' motion for partial dismissal be granted. Jenkins's ADA claims may not be brought against the HISD defendants, Paige, Sturm, Franklin, Arnold, Mincberg, Gallegos, Campos, McAdams, Moss-Clay, Lucas, and Moore, in their individual capacities under controlling law. In addition, his claims against them in their official capacities are redundant, as HISD is already a defendant.
The parties have ten days from receipt to file specific, written objections to the Memorandum and Recommendation. FED.R.CIV.P. 72. Absent plain error, failure to file objections bars an attack on the factual findings, as well as the legal conclusions, on appeal. The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas XXXXX-XXXX. Copies of the objections must be mailed to the opposing parties and to the chambers of the magistrate judge. P.O. Box 610070, Houston, Texas 77208.