Detna KACHER, Plaintiff,

v.

**HOUSTON COMMUNITY COLLEGE SYSTEM, Evelyn Burns, and Teresa Rice, Defendants.**

Civil Action No. H–95–5646.

United States District Court,
S.D. Texas,
Houston Division.

April 29, 1997.

Laurence Wade Watts, Watts and Associates, Houston TX, for Detna Kacher.

Michael Kuhn, Arturo Gabriel Michel, Bracewell and Patterson, Houston, TX, for Houston Community College, Evelyn Burns and Teresa Rice.

## MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

Pending before the Court are the "Defendants' Objections to Magistrate's Memorandum and Recommendation Denying Defendants' Motion for Summary Judgment" [Docs. # 62] and Plaintiff's Response thereto [Doc. # 65]. By Memorandum and Recommendations entered on February 20, 1997, [Doc. # 59], Magistrate Judge Calvin Botley recommended that the Court deny Defendants' Motions for Summary Judgment [Docs.# 33 and 35].[1]

This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). The Objections are timely filed. The Court has reviewed the Memorandum and Recommendations, Defendants' Objections, and Plaintiff's Response, and has made a de novo review of the material on file in light of the Magistrate Judge's recommended disposition of the summary judgment motions. *See* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(C); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 855 (5th Cir.1991).

1. Plaintiff filed a Motion for Partial Summary Judgment [Doc. # 31] on her COBRA claim. Pursuant to Plaintiff's Notice of Acceptance of the Houston Community College System's Offer of Judgment [Doc. # 43], Plaintiff's Motion for Partial Summary Judgment [Doc. # 31] is **DENIED AS MOOT**.

In summary, the Magistrate Judge concluded that Defendants' motions should be denied because this matter raises various questions of material fact. This Court agrees substantially with the Magistrate Judge's ultimate conclusions but modifies the Magistrate Judge's Memorandum and Recommendation in accordance with the following opinion. For the reasons explained below, Defendant HCCS's Motion for Summary Judgment [Doc. # 33] is **DENIED**. Defendants Evelyn Burns and Teresa Rice's Motion for Summary Judgment [Doc. # 33] is **GRANTED IN PART**, in that all of Plaintiff's claims against these individual defendants in their individual capacities are dismissed except for Plaintiff's § 1983 claim against Defendant Rice.

## I. *FACTUAL BACKGROUND*

Plaintiff Detna Kacher ("Plaintiff") began her employment as a full-time instructor in the Radiography Department of Defendant Houston Community College System ("HCCS") in the spring of 1990. On March 3, 1992, Plaintiff began a long term disability leave of absence when she underwent a liver transplant.[2] When she returned from leave, on June 1, 1993, she and Defendant Teresa Rice, the head of the HCCS Radiography Department, arranged for Plaintiff to work part-time, teaching and writing for HCCS during the summer.

Defendants contend that Plaintiff represented that her physical condition allowed her to work only part-time upon her return from leave. However, Plaintiff's account suggests that she was able to and would have liked to work more hours but that Defendants would not make any more work available to her. Plaintiff avers that because she believed that she still retained her full-time status, she assumed that she would resume a full-time schedule of teaching classes in the fall semester.

In the fall, Defendants did not assign Plaintiff full-time teaching responsibilities. Instead, Plaintiff continued teaching part-time until the following spring. Plaintiff claims that in April 1994, she learned for the first time that she had been discharged from her full-time position while she was on disability leave. She claims that until April 1994, she did not know that she no longer held a full-time position and did not realize that an instructor who was hired the previous summer and began teaching in September, 1993, had replaced her. Plaintiff claims that in April 1994, Keffus Falls, an HCCS Human Resources Officer, informed her that she had been dismissed from her full-time position in September 1992, six months into her disability leave. *See* Affidavit of Detna Kacher ("Kacher Affidavit"), Exhibit A of Appendix to Plaintiff's Joint Response to Defendants' Motions for Summary Judgment ("Plaintiff's Appendix") [Doc. # 48], ¶ 25.

Defendants contend that HCCS advertised two full-time instructor positions in June and July, 1993, and that Plaintiff could have applied for these positions but chose not to. Because Plaintiff did not apply, Defendants argue that they believed Plaintiff was no longer interested in working full-time.

Plaintiff brought this action alleging that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); breached her employment contract; and violated her constitutional right to due process.[3] Defendants argue that they are entitled to judgment as a matter of law on all of these claims. With respect to the ADA claim, Defendants contend that Plaintiff was not a "qualified individual" as defined by the ADA, that Plaintiff's requested accommodation would have imposed an undue hardship on HCCS, and that, because Plaintiff received disability benefits after she returned from leave, she is estopped from even arguing that she would have been able to resume her former position. With respect to Plaintiff's claim for breach of contract, Defendants contend primarily that Plaintiff's contract expired by its own terms during Plaintiff's disability leave and that Defendants had no

---

**2.** Plaintiff was on paid disability leave from March 3, 1992, until April 15, 1992. After April 15, 1992, her leave became unpaid.

**3.** Plaintiff also alleged a violation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA") against HCCS. The parties have settled this claim.

obligation to notify Plaintiff that she was no longer employed as a fulltime instructor. With respect to Plaintiff's constitutional claim, Defendants contend primarily that because Plaintiff's contract expired during her leave, Plaintiff had no property interest in her continued employment and therefore may not assert a claim for deprivation of due process. In addition to these defenses, the individual defendants argue that individuals may not be liable under the ADA; that they, as individuals, had no contract with Plaintiff; and that they are entitled to qualified immunity from Plaintiff's due process claim.

## II. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozè v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozè*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Hous. Assn. v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996); *Taylor v. Principal Financial Group, Inc.*,

93 F.3d 155, 161 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

## III. DISCUSSION

### A. Americans with Disabilities Act (ADA)

Plaintiff claims that Defendants violated the ADA by refusing to restore her to her previous position when she returned from disability leave and by refusing to make a reasonable accommodation so that she could resume her former teaching duties. The ADA makes it unlawful for an employer to discharge or otherwise discriminate against "a qualified individual with a disability" with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect the person's status as an employee "because of the disability of such individual." 42 U.S.C. § 12112(a). "Discrimination" includes "not making reasonable accommodations to the known physi-

cal or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

### 1. *Individual Defendants*

■ Individuals who do not meet the statutory definition of "employer" cannot be held liable in their individual capacities under the employment provisions of the ADA. *See Jenkins v. Board of Educ. of Houston Indep. School Dist.*, 937 F.Supp. 608, 613 (S.D.Tex. 1996). "The ADA's definition of 'employer' mirrors the definitions of 'employer' in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act (ADEA)." *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995). Because the Fifth Circuit has held that individuals acting in their individual capacity may not be liable under Title VII, *see Garcia v. Elf Atochem North America*, 28 F.3d 446, 451 & n. 2 (5th Cir.1994), or under the ADEA, *see Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir.1996), Plaintiff's ADA claims against Defendants Burns and Rice in their individual capacities are dismissed.[4]

### 2. *HCCS*

To succeed on her ADA claim against HCCS, Plaintiff bears the initial burden of establishing a prima facie case by showing that: (1) she suffers from a disability; (2) she was qualified for the job; (3) she was subject to an adverse employment action; and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155. If Plaintiff establishes this prima facie case, a presumption of discrimination is created, and the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for its actions. *See Daigle v. Liberty*

*Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). If Defendant satisfies this burden, "the shifting burden scheme is abandoned and becomes irrelevant. The employer's intent is a question of fact." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)).

HCCS argues that Plaintiff has not established a prima facie case under the ADA because, upon her return from disability leave, Plaintiff was not qualified to resume her earlier job.[5] Under the ADA, a "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

HCCS supports its claim that Plaintiff has not met her prima facie burden with two arguments. First, it contends that Plaintiff is estopped from arguing that she was qualified for her former full-time job. Second, it contends that the accommodation Plaintiff requested from HCCS was not reasonable and would have imposed an undue hardship on HCCS. The Court concludes that neither of these arguments precludes Plaintiff's recovery under the ADA. Because Plaintiff has instead raised genuine issues of material fact with respect to both arguments, HCCS's Motion for Summary Judgment on Plaintiff's ADA claim is denied.

### a. *Estoppel*

■ HCCS contends that Plaintiff is estopped from arguing that she was qualified for her former full-time position because, even after returning from her leave, she continued to receive disability benefits and represented to her insurer that she was unable to resume her previous full-time position due to her disability. HCCS cites cases from

---

4. Plaintiff's ADA claims against Defendants Burns and Rice in their official capacities are legally equivalent to Plaintiff's claim against the HCCS, which is discussed in the following section. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (official-capacity suits "generally represent only

another way of pleading an action against an entity of which an officer is an agent").

5. Defendants do not dispute that Plaintiff has satisfied the other three elements of a prima facie case.

other jurisdictions that have held that when a plaintiff receives a disability benefit that requires a finding that the plaintiff cannot perform the essential functions of her position, then the plaintiff is estopped from claiming that she is a qualified individual under the ADA. *See Miller v. U.S. Bancorp.,* 926 F.Supp. 994 (D.Or.1996); *Cline v. Western Horseman, Inc.,* 922 F.Supp. 442 (D.Colo. 1996).

The Court is not persuaded by HCCS's argument in the circumstances of this case. Courts that have held plaintiffs estopped from arguing that they are "qualified individuals" for purposes of pursuing claims under the ADA have based this estoppel on the plaintiffs' representations of *total disability* in another *legal proceeding* or in a benefits application to the federal Social Security Administration. *See McNemar v. Disney Store, Inc.,* 91 F.3d 610 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997); *Kennedy v. Applause, Inc.,* 90 F.3d 1477 (9th Cir.1996); *Johnson v. Hines Nurseries, Inc.,* 950 F.Supp. 175 (N.D.Tex.1996); *Harris v. Marathon Oil Co.,* 948 F.Supp. 27 (W.D.Tex.1996), *aff'd,* 108 F.3d 332 (5th Cir.1997). In contrast, in the case at bar, Plaintiff did not represent that, at the time HCCS allegedly discriminated against her, she was *totally* disabled, and, in any case, the disputed representations were made to her private insurer, not to a court or the Social Security Administration. The

Fifth Circuit has recently affirmed a district court that refused to bar an ADA claim by a plaintiff who made representations to his private insurer that did not unambiguously characterize him as totally disabled. *See Anzalone v. Allstate Insurance Co.,* 1995 WL 35613 (E.D.La.1995), *aff'd,* 74 F.3d 1236 (5th Cir.1995). In addition, the Fifth Circuit has limited the application of judicial estoppel to cases in which a "party has been successful in persuading *a court* to accept its position." *See United States v. C.I.T Construction Inc. of Texas,* 944 F.2d 253, 259 (5th Cir.1991) (emphasis added); *Moore v. United Services Automobile Assoc.,* 808 F.2d 1147, 1153 n. 6 (5th Cir.1987).

In its Motion, HCCS lists eleven alleged representations made by Plaintiff and her physicians to Plaintiff's private insurer. *See* HCCS's Motion, at 8–10. None of these representations indicate that, during the period Plaintiff sought to resume her former position, she was totally disabled or incapable of performing the essential functions of her former position. Instead, consistent with Plaintiff's argument, these representations indicate that, as of June 1993, Plaintiff was "partially disabled" and capable of commencing part-time teaching during the summer. The representations do not exclude the possibility that she could resume her previous position of full-time teaching in the fall semester.[6]

---

**6.** Although two of the representations on HCCS's list, the sixth and seventh, appear to state that Plaintiff was unable to perform her previous position after the summer of 1993, both contain significant ambiguities. Therefore, the Court does not hold Plaintiff estopped by them.

The sixth item is a representation by Plaintiff's physician, Dr. Margaret Bridges, that on November 10, 1993, Plaintiff was "totally incapable of performing her job." Defendant's Motion, at 9. However, the report from which this representation was taken appears to contain either an error or an internal inconsistency. On the report, dated November 10, 1993, Dr. Bridges marked a box indicating that "[the] patient is now totally incapable of performing his/her job" of part-time teaching but then, three questions later, indicated that the date on which the patient could commence part-time teaching was three months earlier, on July 31, 1993. *See* Supplementary Report of Disability, Exhibit 16 to Deposition of Victoria Pruch (Mutual of Omaha Insurance Companies), Exhibit 31 in Appendix to Defen-

dants' Motions for Summary Judgment ("Defendants' Appendix") [Doc. # 37]. The parties do not dispute that Plaintiff taught part-time through the summer and fall of 1993. Because of this apparent inconsistency, HCCS cannot rely on this evidence to meet its summary judgment burden. Instead, the Court finds resolution of the issue of Plaintiff's capabilities after the summer of 1993 to be a factual evidentiary matter. The seventh item is a representation by Dr. Bridges that, on November 30, 1994, "Plaintiff's present job could not 'be modified for handling with [Plaintiff's] impairment'" [sic]. Defendant's Motion, at 9. This representation was made after Plaintiff no longer worked for HCCS. It is unclear whether this assertion that Plaintiff's job "could not" be modified indicates that it would not have been possible for HCCS to provide reasonable accommodation for Plaintiff, as defined by the ADA, or whether it indicates merely that Plaintiff's employer, HCCS, refused to provide reasonable accommodation. Again, because of the ambiguity, the Court finds this

Additionally, Plaintiff's former position officially entailed full-time teaching for only nine months of the year, apparently September through May. *See* Employment Contract, Exhibit R in Plaintiff's Appendix. Even if the 1993–94 school year were deemed to cover the 1993 summer term,[7] the fact that she could only work part-time in that summer does not mean that she would have been unable to resume her former duties, full-time teaching, in the fall and spring semesters.

■ Therefore, the Court concludes that Plaintiff is not estopped from pursuing her ADA claim. Representations made to a private insurer do not raise the issue of judicial estoppel, and, in any case, the representations allegedly made by Plaintiff and her doctors to her insurance carrier and to HCCS do not unequivocally contradict Plaintiffs' allegations as to her capabilities after the summer of 1993. Thus, these representations do not legally preclude Plaintiff from pursuing her ADA claim. Instead, the Court holds that HCCS may offer these representations and related documentation as evidence at trial on the issue of whether or not Plaintiff was a qualified individual under the ADA.

#### b. *Reasonable Accommodation*

Plaintiff contends that HCCS failed to make a reasonable accommodation for her as required by the ADA. HCCS argues conversely that Plaintiff's desired accommodation would have imposed an undue hardship and that therefore HCCS was not obligated to provide this accommodation.

■ HCCS seems to claim that Plaintiff's desired accommodation was that she be permitted to teach only in the classroom and not be assigned any clinical teaching responsibili-

ties. HCCS argues that it is important for radiography instructors to teach both in the classroom and in clinical settings in order to keep their knowledge current and for administrative scheduling reasons. HCCS claims that, as a matter of law, the ADA does not require employers to modify their job structures so as to accommodate employees with disabilities. While the Court concurs that there is no requirement under the ADA that an employer create a new job for a disabled employee, *see Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211, resolution of this issue in this case depends on the outcome of factual disputes.

■ Plaintiff's summary judgment evidence has raised a genuine question of material fact as to what accommodations she actually sought. According to her testimony, Plaintiff did not request that she be excused entirely from clinical teaching. Instead, Plaintiff alleges that she offered to resume clinical teaching with the slight accommodation that she not be required to do any heavy lifting, in accordance with her doctor's recommended restriction.[8] In any case, Plaintiff argues that it would not have been an undue hardship for HCCS to provide her with primarily or solely classroom teaching duties. In her deposition, Defendant Rice admitted that there was no reason why HCCS would not have been able to accommodate Plaintiff with a full-time classroom position in the fall 1993. *See* Deposition of Teresa Rice, Exhibit O of Appendix to Plaintiff's Response, at 73. Plaintiff has also presented evidence suggesting that, for the 1993–94 school year, three of HCCS's nine fulltime

---

representation to raise a factual evidentiary issue. *See D'Aprile v. Fleet Services Corp.*, 92 F.3d 1 (1st Cir.1996) (refusing to bar state handicap discrimination claim by plaintiff on the basis of representations to private insurer that she was totally disabled *after* employer failed to provide accommodation for plaintiff).

7. Since HCCS hired Plaintiff's replacement in September 1993, it would appear that the twelve month contract ran from September 1993 through August 1994, a period throughout which Plaintiff claims she could have performed full-time work.

8. In her affidavit, Kacher testifies that:

I asked Ms. Rice if I could have one of the clinical positions. She strongly objected, stating that she did not want to "risk" putting me in clinic [due to my immuno-suppression?]. I told her that although I did have lifting restrictions due to my disability and the resulting osteoporosis, my doctors did not consider clinic work high risk as long as I was accommodated by not having to lift heavy things (such as X-ray equipment and patients). Ms. Rice, however, was adamant in her position that she did not want to assign me to a clinic.

*See* Kacher Affidavit, ¶ 14.

instructors were entirely classroom, not clinical instructors. *See* Exhibits E and F of Plaintiff's Appendix.[9]

In addition, Plaintiff claims that before she took her disability leave, her position included primarily classroom teaching duties and only occasional clinical teaching. Defendants seem to contend that, when Plaintiff returned from leave, HCCS modified her position such that it included primarily clinical teaching. Thus Defendants contend that the clinical instructor vacancy which it advertised in the summer of 1993, and for which Plaintiff did not apply, was in fact Plaintiff's former position.

Plaintiff has thus raised several genuine questions of material fact with respect to the issue of reasonable accommodation. First, the parties have presented conflicting accounts of what accommodation Plaintiff needed or requested. Second, if Plaintiff desired primarily classroom teaching duties, it is not clear from the summary judgment evidence how much of a hardship this request would have created for HCCS and whether accommodating her would have entailed restructuring its teaching positions entirely or merely retaining its previous teaching structure. In any case, reasonable accommodations under the ADA may include job restructuring and part-time or modified work schedules. *See* 42 U.S.C. § 12111(9)(b); *Riel v. Electronic Data Systems Corp.,* 99 F.3d 678, 683 (5th Cir.1996) (reversing summary judgment and holding that whether a proposed accommodation is reasonable or "would cause disruption in [Defendant's] working structure . . . is for the trier of fact"). Because Plaintiff has met her summary judgment burden on her ADA claim, HCCS's Motion with respect to this claim is denied.

**B.  *Breach of Contract***

Plaintiff contends that HCCS breached her employment contract[10] in two ways: first, by dismissing her from her full-time position without following the notice procedures required under the contract and, second, by failing to "make every effort" to place her in a vacant position when she returned from disability leave. For both of these arguments, Plaintiff refers to HCCS policies, which are incorporated by reference into her contract. *See* Exhibit R of Plaintiff's Appendix ("[t]his Contract is specifically subject to the Policies and Procedures, rules and regulations of the Employer which are in effect at this time").

**1.  *Dismissal Without Notice***

■ With respect to her first argument, Plaintiff contends that HCCS violated its Policy 5–7–1, entitled "Dismissal/Disciplinary Action," which provides that the following procedure be followed when HCCS employees are "disciplined in regard to their employment or dismissed from employment":

> Notice of non-reappointment or of intention not to reappoint a full-time employee will be given in writing by the President not later than two months or 60 days prior to the last day of the contract year for that employee. Failure of the College to provide such notice will automatically result in the issuance of a "like" contract or agreement to the employee for the forthcoming contract period, but in no event shall the forthcoming contract or agreement be for less salary.

Exhibit S of Plaintiff's Appendix, at 1; Exhibit 14 of Defendants' Appendix, at 1.[11] Because Plaintiff never received the notice described in this policy, she contends that, pursuant to this policy, when her contract expired on May 15, 1992, it should have

---

**9.** Exhibit F, a budget sheet for 1993–94 faculty, includes Plaintiff on its list of full-time faculty, but not her purported replacement, Jenny Hawkins.

**10.** Although Plaintiff appears to direct all of her claims against all three defendants, her employment contract was between herself and HCCS. Because Defendants Burns and Rice were not, in their individual capacities, parties to the contract, Plaintiff cannot state a cause of action for breach of contract against them. Therefore, any

breach of contract claims Plaintiff may have alleged against Defendants Burns and Rice in their individual capacities are dismissed.

**11.** Policy 5–7–1 appears on its face to apply to Plaintiff. In ¶ VI.C., Policy 5–7–1 states that it covers dismissals related to an employee's "[p]hysical or mental condition, which incapacitates the employee to such a degree that the employee can no longer perform the job function." Exhibit S to Plaintiff's Appendix, at 3; Exhibit 14 to Defendants' Appendix, at 3.

been automatically renewed for another year. Instead, according to Plaintiff, she was informed in April 1994 that she had been dismissed from her full-time position in September 1992, six months into her disability leave. *See* Kacher Affidavit, ¶ 25.

HCCS argues that Plaintiff's contract expired by its own terms on May 15, 1992, while Plaintiff was on disability leave, and thus HCCS was not required to provide the notice described in Policy 5–7–1. HCCS contends that Policy 5–7–1 applies only to "disciplinary" dismissals or non-renewals and that, instead, the non-notice provision of Policy 5–1–3, entitled "Employment Provisions," applies to Plaintiff's situation. *See* Exhibit U of Plaintiff's Appendix, at 7; Exhibit 10 of Defendants' Motion, at 7. This policy provides in part that "[e]mployment automatically terminates at the end of the indicated period without notice and without any obligation on the part of HCCS to state the reasons therefor." *Id.* This non-notice provision, however, is located within Policy 5–1–3 at Section VI.B., which applies to "Part-time/temporary/hourly employees." *See id.*, at 6.

Because Plaintiff's contract provides that "[t]he Employer may terminate this Contract for the reasons and following the procedures set forth in the Policies and Procedures for the Employer," Exhibit R in Plaintiff's Appendix, it appears that HCCS was obligated to follow *some* procedure. However, since HCCS's leave policy, Policy 5–3–5 (Exhibit V of Plaintiff's Appendix; Exhibit 11 of Defendants' Appendix) does not establish expressly what procedure HCCS must follow when it terminates an employee's full-time status while she is on disability leave, the contract is ambiguous. It is unclear from the summary judgment record whether HCCS was required to provide notice to Plaintiff of her dismissal (allegedly in September 1992), or non-renewal of her contract, under policy 5–7–1 or whether HCCS was not required to provide such notice pursuant to policy 5–1–3. Although HCCS argues that the Court should give deference to HCCS's interpretation of its own policies, the plain language of Policy 5–1–3 establishes that the quoted provision applies only to "Part-time/temporary/hourly employees." HCCS does not explain how Plaintiff became a part-time employee or how she validly lost her full-time employment status while on leave.[12] Thus, Plaintiff has raised a genuine question of fact regarding which policy, Policy 5–7–1 or Policy 5–1–3, should have applied to her and thus whether HCCS was obligated to notify Plaintiff of her dismissal (if that was the course HCCS intended to take during Plaintiff's medical leave). The Court therefore finds that summary judgment for HCCS is not appropriate on Plaintiff's breach of contract claim.

## 2. Failure to "Make Every Effort" to Place Plaintiff Upon Her Return

With respect to her second argument, Plaintiff contends that HCCS violated its leave policy, Policy 5–3–5, which provides in part that, if HCCS fills the position of an employee who takes a leave because of personal illness, HCCS will "make every effort to place that returning person in a vacant position for which he/she is qualified." Exhibit V of Plaintiff's Appendix, at 3; Exhibit 11 of Defendants' Appendix, at 3. Plaintiff argues that, upon her return from leave, HCCS did not attempt to place her in a vacant position but instead refused her repeated requests for more work assignments. HCCS contends, on the other hand, that Plaintiff declined to teach classes that HCCS offered to her and that Plaintiff chose not to apply for either of the vacant positions that were advertised during the summer of 1993. In turn, Plaintiff denies that she declined teaching assignments and avers that, because she assumed she still retained a full-time

12. Although HCCS may contend that Plaintiff voluntarily became a part-time employee when she returned from disability leave, Plaintiff's argument is that she was wrongfully terminated *before* she returned from leave. Furthermore, Plaintiff contends that she never voluntarily changed her status to part-time employment. On the contrary, she argues that she believed, based on representations made to her by HCCS agents both before and after she went on leave, that she would and did have full-time status upon her return from leave. These disputes are intertwined with the basic factual questions the jury must resolve as to which of HCCS's policy provisions apply in Plaintiff's circumstances.

position and expected to resume full-time teaching in the fall, she had no reason to know she should apply for the advertised positions.

HCCS also appears to argue that, even if its attempt to dismiss Plaintiff during her leave was not valid, HCCS was not obligated to comply with the placement provision of Policy 5–3–5 because Plaintiff did not submit a written statement from a doctor indicating that she was ready to return to work. Policy 5–3–5 provides in part that an employee's "request for a return to duty shall be accompanied by a statement from the employee's physician attesting that the returning employee is physically and emotionally ready to fulfill assigned duties." Exhibit V of Plaintiff's Appendix, at 11; Exhibit 11 of Defendants' Appendix, at 11. Plaintiff argues in response that when she notified HCCS of her intended return, she orally informed Defendant Rice that her doctor said that she was ready to return to work and Rice agreed to assign her work responsibilities without telling her that she needed to submit a written statement directly from her doctor. Plaintiff argues that Policy 5–3–5 does not, by its plain language, require a written statement directly from a returning employee's doctor, and that, even if it does, Rice waived this requirement for HCCS by assigning her work upon hearing orally from Plaintiff that her doctor approved her return to work.

■■■ The Court disagrees with Plaintiff's interpretation of the "plain language" of Policy 5–3–5 and holds that the structure and language of the policy reveals there is a requirement of a written statement directly from the employee's physician. The requirement that the employee's "request for a return to duty shall be accompanied by" a

statement "from the employee's physician" "attesting" that the employee is ready to fulfill assigned duties can mean no less. However, the Court concludes that Plaintiff has established a genuine question of material fact as to whether this requirement was waived when Rice acted on Plaintiff's oral statement that her doctors had released her to resume work.

The Court concludes that Plaintiff thus has raised genuine questions of material fact on these issues precluding summary judgment on this part of Plaintiff's breach of contract claim. If, at trial, Plaintiff successfully establishes that she was still employed by HCCS under a full time contract in September 1993, then it will be the factfinder's job to determine whether HCCS waived the requirement that Plaintiff was required to submit a written notice from her doctor in order to return from leave; if so, whether HCCS made every effort to place Plaintiff in a vacant position for which she was then qualified; and whether Plaintiff cooperated in any such effort.

## C. *Due Process*

Plaintiff contends that because she was terminated without notice, Defendants violated her constitutional right to procedural due process.[13] Plaintiff brings her due process claim against Defendants pursuant to 42 U.S.C. § 1983. The due process clause of the Fourteenth Amendment to the United States Constitution requires an employer to provide notice and opportunity to respond before discharging an employee who has a property interest in continued employment. *See Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).[14]

---

13. Defendants argue that Plaintiff cannot state a claim for violation of her substantive due process rights. However, it does not appear to the Court that Plaintiff attempted to state such a claim.

14. Defendants argue that Plaintiff did have notice and an opportunity to respond because HCCS has a policy allowing employees to file grievances concerning their employment. *See* Affidavit of John Greet, Associate Vice Chancellor for Human Resources, Exhibit 7 of Defendants' Appendix, at 3. Thus Defendants contend that, upon learning of her dismissal in April

1994, Plaintiff could have requested a hearing pursuant to Policy 5–7–2 but simply chose not to invoke this procedure. This argument does not, however, adequately address Plaintiff's due process claim. At best, it is relevant to Plaintiff's alleged damages. Plaintiff argues that, because she was dismissed from her full-time position while she was on leave, she was entitled to notice, while she was on leave, of her impending dismissal and to an opportunity to respond before that dismissal became effective. The fact that she could have received a hearing one and a half years later would not have satisfied her

■ Defendants first contend that Plaintiff did not have a property interest in her continued employment. Under *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972), "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support [her] claim of entitlement to the benefit and that [she] may invoke at a hearing." Plaintiff argues that she had a property interest in her continued employment by virtue of her contract with HCCS as well as a mutually explicit understanding between Defendants and herself that she would retain her status as a full-time employee while on disability leave. Plaintiff's affidavit contains the following testimony regarding this alleged understanding:

> In preparing for my leave, I contacted the Human Resources department to check on continuance of medical insurance and other benefits. I specifically inquired about my status during my leave, and about my status upon returning to work after the transplant. I was told by Keffus Falls—who administers employee benefits for HCCS—that I would maintain my status and be eligible for all my employee benefits.... Mr. Falls also assured me that I would be reinstated as a full-time faculty member when I was able to work again.

Kacher Affidavit, ¶¶ 4–5.[15]

Based on this testimony and for the reasons discussed in the preceding section supporting Plaintiff's right to claim that, at the time she was terminated, she had a valid contract with HCCS, the Court concludes that Plaintiff has raised a genuine question of material fact regarding whether she had a property interest in her continued employment.[16]

## 1. *HCCS*

■ In order to state a § 1983 claim against an educational institution, "a plaintiff must allege that officials acted in accordance with an official governmental policy or firmly entrenched custom that deprived the plaintiff of constitutional rights." *Brown v. Houston Indep. School Dist.*, 763 F.Supp. 905, 908 (S.D.Tex.1991), aff'd, 957 F.2d 866 (5th Cir.), cert. denied, 506 U.S. 868, 113 S.Ct. 198, 121 L.Ed.2d 140 (1992) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989); *Monell v. City of New York Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)). The Fifth Circuit has defined "official policy" as follows:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [institution] ... or by an official to whom the [institution] has delegated policy-making authority; or

2. A persistent, widespread practice of [institution] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a claim that fairly represents [institutional] policy. Actual or

---

constitutional right under *Loudermill* to notice and opportunity to respond before being dismissed. By the time Plaintiff claims to have first received notice of her dismissal from full-time employment, HCCS had already replaced her. Thus, even if she had an opportunity at that time to file a grievance, that opportunity would not have been an effective opportunity to challenge her dismissal.

**15.** Plaintiff also alleges that, after she attempted to return from leave, Defendants continued to lead her to believe that she remained on full-time status. She contends that when she called Human Resources to inquire about her status, she was told that the fact that she was still receiving benefits only available to full-time employees indicated that she was still on fulltime status. In addition, she contends that no one informed her,

until April 1994, that she had been discharged from her full-time position. However, for purposes of Plaintiff's constitutional claim, the relevant inquiry is whether, at the time Defendants allegedly violated her right to due process, she had a property interest in continued employment. Because Plaintiff's due process claim is that she did not receive notice of her termination from full-time status, the issue is whether, at the time at which she was terminated, she had a property interest in her continued employment.

**16.** Exhibit F of Plaintiff's Appendix, which includes Plaintiff on its list of full-time faculty for 1993–94, provides further evidence that a mutually explicit understanding existed between Plaintiff and HCCS that she would retain her status as a full-time employee upon her return from disability leave.

constructive knowledge of such custom must be attributable to the governing body of the [institution] or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996) (citing *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir.1992)). Whether a particular official or governing body has final policy-making authority is a question of state law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir.1993). The school board is the final policy-making authority for school districts in Texas. *See id.; Gonzalez v. Ysleta Indep. School Dist.,* 996 F.2d 745, 753–54 (5th Cir.1993). Under Texas law, the board of trustees of a junior college is governed by the same law as applies to school districts. *See* Tex. Educ.Code § 130.084. Accordingly, the HCCS Board of Trustees is the equivalent of the "school board" for HCCS. Thus, Plaintiff may prevail on her § 1983 claim against HCCS if she can show that the HCCS Board adopted an unconstitutional policy. *See Campbell v. City of Antonio,* 43 F.3d 973, 977 (5th Cir.1995); *Gonzalez,* 996 F.2d at 753–54.

HCCS argues that, even if Plaintiff had a property interest in her continued employment, HCCS cannot be held liable for violating her right to due process because the HCCS Board, the official decision-maker for the HCCS, itself took no action against Plaintiff. The Court rejects this argument. By the admissions of its own members, the HCCS Board does not, as a matter of policy, give notice to employees who are dismissed while on leave. In their affidavits, Boards members Francisco Medina and W.F. Russell testify identically as follows:

> The Board interprets policy 5–7–1, and has only applied it to, the termination of employment for disciplinary reasons with regard to performance. The Board does not apply this policy to employees under leave policy 5–3–5 or its successor policies.... In the absence of loss of employment under HCCS leave policies or disciplinary

policies, and without renewal of a contract, the Board interprets its policies to apply policy 5–1–3, Section VI.B.5 to loss of employment. This policy requires automatic termination of employment at the end of the contract period without notice and any obligation on the part of the HCCS to state the reasons therefor.

Affidavit of Francisco Medina, Exhibit 4 of Defendants' Appendix, ¶ 3; Affidavit of W.F. Russell, Exhibit 6 of Defendants' Appendix, ¶ 3.

Therefore, Plaintiff may succeed on her due process claim against the HCCS if she can prove, as described earlier, that she had a property interest in her continued employment and that she was in fact dismissed, pursuant to the Board's interpretation of HCCS policy, without adequate notice and opportunity to be heard. Therefore, HCCS's Motion for Summary Judgment on Plaintiff's due process claim is denied.

#### 2. *Individual Defendants*

Defendants Burns and Rice argue that they are shielded by qualified immunity from liability in their individual capacities from Plaintiff's due process claim. Qualified immunity shields officials performing discretionary functions from liability for suits brought against them in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir.1995).

In examining an official's claim of qualified immunity, courts follow a two-step process. The first step is to ascertain whether the plaintiff alleges "the violation of a clearly established constitutional right." *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991). The right the official is alleged to have violated must have been clearly established at the time of the occurrence. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Harper v. Harris County, Tex.,* 21 F.3d 597, 600 (5th Cir.1994). In this action, there is no dispute that, if Plaintiff had a property interest in her continued

employment, she was entitled, under clearly established constitutional law, to notice of and opportunity to contest her dismissal.

The second step is to decide whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *See Gunaca v. State of Tex.*, 65 F.3d 467, 473–74 (5th Cir.1995). Whether the conduct of which the plaintiff complains violated clearly established law, so as to preclude the application of qualified immunity, is essentially a legal question. *See White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985)). However, the Fifth Circuit has recognized that, in some limited instances, it is appropriate to submit a qualified immunity question to the jury. *See Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir.1993).

Plaintiff argues that although both Burns and Rice knew that Plaintiff had been deprived of her full-time position, neither Defendant gave Plaintiff notice of that fact until April 1994.[17] Plaintiff argues that Defendants' conduct led Plaintiff to believe that her full-time status was secure and thus was objectively unreasonable. The Court agrees that, if Burns and/or Rice knew that Plaintiff held a property interest in her continued employment, in other words, if Burns and/or Rice knew or should have known that Plaintiff had a valid expectation of continued employment, because they knew or should have known her contract was still in effect, then there would be a genuine issue of material fact regarding whether the individual defendants' conduct toward Plaintiff was objectively reasonable.

The Court concludes that Plaintiff has produced sufficient evidence that Defendant Rice had the necessary knowledge to meet her summary judgment burden with respect to Defendant Rice. In her affidavit, Plaintiff testifies that Rice repeatedly assured her, upon Plaintiff's return from leave, that she would assign her a full-time teaching schedule but that Rice avoided ever making

such an assignment. Judged in the light most favorable to Plaintiff, this evidence suggests that although Defendant Rice knew that Plaintiff had been dismissed from her full-time position, she understood that Plaintiff had a valid expectation in her continued full-time employment. The fact that Rice appeared so hostile to Plaintiff's attempt to return to work but nevertheless continued to assure Plaintiff that she would assign her a full-time teaching schedule seems to indicate that Rice knew Plaintiff had a valid expectation that she remained a full-time employee.

Thus, Plaintiff has satisfied her summary judgment burden with respect to Defendant Rice. However, Plaintiff has produced no evidence whatsoever regarding Defendant Burns' knowledge or actions. Therefore, the individual defendants' motion for summary judgment on Plaintiff's due process claim is denied with respect to Defendant Rice but granted with respect to Defendant Burns.

## IV. *CONCLUSION*

For the foregoing reasons, it is

**ORDERED** that Defendant HCCS's Motion for Summary Judgment [Doc. # 33] is **DENIED**. It is further

**ORDERED** that Defendants Evelyn Burns and Teresa Rice's Motion for Summary Judgment [Doc. # 33] is **GRANTED IN PART** in accordance with this Memorandum Opinion and Order. All of Plaintiff's claims against these individual defendants in their individual capacities are dismissed, except for Plaintiff's § 1983 claim against Defendant Rice. It is further

**ORDERED** that the parties may amend the Pretrial Order to reflect the issues covered in this Memorandum Opinion and Order. It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc.# 31 ] is **DENIED AS MOOT.**

---

**17.** Plaintiff essentially argues that HCCS violated her constitutional right by *terminating* her without due process and that the individual defen-

dants violated her constitutional right by *failing to give her notice* of her termination.