Dr. Gloria DANSBY–GILES, Plaintiff

v.

JACKSON STATE UNIVERSITY, and Dr. Jean Farish–Jackson, Dr. Daniel Watkins, and Dr. Velvelyn Foster, Individually, Defendants.

Civil Action No. 3:08CV349TSL–JCS.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 9, 2009.

Robert Nicholas Norris, Louis H. Watson, Jr., PA, Jackson, MS, for Plaintiff.

Carlton W. Reeves, Pigott, Reeves, Johnson, P.A., Jackson, MS, for Defendants.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Jackson State University (JSU), Dr. Jean Farish–Jackson, Dr. Daniel Watkins and Dr. Vevelyn Foster to dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Plaintiff Dr. Gloria Dansby–Giles has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that defendants' motion is well taken and should be granted.

Plaintiff, who is employed by defendant JSU as a professor and counselor in its College of Education and Human Development, brought this action under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112(a),[1] against JSU, and against Drs. Jean Farish–Jackson, Daniel Watkins and Velvelyn Foster in their individual capacities, complaining that although she informed JSU and provided documentation substantiating her claim that she is a qualified person with a disability under the ADA, JSU failed to provide her reasonable and feasible accommodation for her known disability. She further asserted a claim for retaliation under the ADA, charging that in retaliation for her filing of EEOC charges relating to JSU's failure to accommodate her disability, JSU denied her the opportunity to teach three courses for additional compensation. As relief, plaintiff demands compensatory and punitive damages, and an injunction barring JSU from in the future assigning her to any work station that is not fully ADA compliant.

---

1. Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

Defendants have moved to dismiss plaintiff's claims against JSU based on its immunity under the Eleventh Amendment, and have moved to dismiss plaintiff's claims against Drs. Farish–Jackson, Watkins and Foster on the basis that under the ADA, they are not "employers" in their individual capacities. In her response to defendants' motion, plaintiff does not address, and hence does not challenge defendants' position that the individual defendants, who have been sued only in their individual capacities, are entitled to be dismissed since they are not plaintiff's employer. *See Comeaux v. Thaler*, Civil Action No. H–01–1411, 2008 WL 818341, *18 (S.D.Tex. Mar. 24, 2008) (ADA claims against individuals listed in complaint failed to state a valid cause of action as a matter of law since they were not employers in their individual capacity); *Walker v. City of Vicksburg, Miss.*, Civil Action No. 5:06cv60–DCB–JMR, 2008 WL 126948, *1 (S.D.Miss. Jan. 10, 2008) (holding that ADA "does not operate to impose liability upon individual employees"); *Kacher v. Houston Comm. College Sys.*, 974 F.Supp. 615, 619 (S.D.Tex.1997) (individuals acting in their individual capacity who do not meet statutory definition of "employer" cannot be sued under the ADA).

As to JSU, plaintiff acknowledges that a state traditionally has Eleventh Amendment immunity to claims for violation of the ADA. She submits, however, that JSU has waived its Eleventh Amendment immunity by appearing and defending this action on the merits and/or by accepting federal funds. The court rejects both arguments.

 The Eleventh Amendment guarantees that nonconsenting states cannot be sued for money damages by private individuals in federal court. Although Congress may abrogate the states' immunity in certain situations, the Supreme Court held in 2001 that Congress's purported abrogation of states' Eleventh Amendment immunity from suits by private individuals for money damages under Title I of the ADA was invalid. *See Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001). Such suits are thus barred under the Eleventh Amendment. *Id.* Notwithstanding the Court's holding in *Garrett* that Congress could not validly *abrogate* the states' Eleventh Amendment immunity for these claims, plaintiff argues that JSU has itself *waived* its Eleventh Amendment immunity by accepting federal funds. However, the cases on which plaintiff relies for her position have involved claims brought not only under the ADA but also under § 504 of the Rehabilitation Act, *e.g., Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 n. 3 (2d Cir.2001); *Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 301 n. 6 (5th Cir.2005).[2] Unlike the ADA, § 504 of

**2.** These courts have reasoned that a state's acceptance of federal funds prior to *Garrett* would not have amounted to a waiver of immunity since, before *Garrett* was decided, it appeared that Congress had abrogated the states' immunity; and a state could not knowingly waive immunity if it did not know that it had immunity. *See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 n. 3 (2d Cir.2001) (holding that state's acceptance of federal funds prior to *Garrett* did not constitute waiver of Eleventh Amendment immunity for Rehabilitation Act claim since the state, in accepting the funds, had no reason to believe it was actually relinquishing its right to sovereign immunity so as to make the consent to federal jurisdiction meaningful). However, after *Garrett* was decided, when states were aware that they were immune from Title I private suits for disability discrimination under the ADA and that they were only subject to suit under § 504 of the Rehabilitation Act if they voluntarily accepted federal funds. *See Pace v. Bogalusa City School Bd.*, 403 F.3d 272, 301 n. 6 (5th Cir. 2005) (noting that "after *Garrett* was decided, the State defendants could knowingly waive their immunity because they could have reasonably anticipated the ability to preserve sov-

the Rehabilitation Act applies only to those state agencies or departments receiving federal funds and only during the periods during which the funds are accepted, and a waiver of Eleventh Amendment immunity is an express condition for acceptance of such funds. *See Garcia,* 280 F.3d at 113 n. 2 (nothing that "[w]hile Title II (of the ADA) applies to all state and municipal governments, § 504 applies only to those government agencies or departments that accept federal funds, and only those periods during which the funds are accepted" and provides that a state waives Eleventh Amendment immunity by accepting such funds); 42 U.S.C. § 2000d–7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."). Thus, it is not the mere receipt of federal funds that establishes a waiver. Rather, it is the receipt of federal funds which is expressly conditioned on a waiver of immunity that establishes consent to suit. *See Rizo v. Alabama Dept. of Human Resources,* 228 Fed.Appx. 832, 835, 2007 WL 278587, *1 (11th Cir.2007) (stating that "the mere receipt of federal funds cannot establish that a state has consented to suit" and holding that state had immunity notwithstanding receipt of federal funds) (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 246–47, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985)).

Plaintiff argues alternatively that JSU has waived its immunity by defending this lawsuit on the merits. "[A] state may waive its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of the federal court, either by defending an action in federal court on its merits or by 'voluntarily submitting its rights to judicial determination' in federal court." *In re Texas,* 110 F.Supp.2d 514, 531 (E.D.Tex. 2000) (citing *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999)); *see also Neinast v. Texas,* 217 F.3d 275, 279 (5th Cir.2000) (observing that "[c]ourts have found waiver in two general varieties of cases: where the state asserted claims of its own or evidenced an intent to defend the suit against it on the merits"). In determining whether there has been a waiver, courts evaluate the extent to which a state has participated in the lawsuit and whether it has defended the case on its merits. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 131 F.3d 353, 365 (3d Cir.1997) (collecting cases), *aff'd,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). They recognize that "[a] state's waiver of immunity must be unequivocal," but that "[i]t may evidence that waiver … through action other than an express renunciation." *Neinast,* 217 F.3d at 279. In *Hill v. Blind Industries and Services of Maryland,* 179 F.3d 754 (9th Cir.1999), the court, addressing the concept of waiver by participation, explained as follows:

A waiver of Eleventh Amendment immunity must unequivocally evidence the state's intention to subject itself to the jurisdiction of the federal court. *See Atascadero State Hosp. v. Scanlon,* 473

ereign immunity by declining federal funds under the Rehabilitation Act and the IDEA."). *See also Constantine v. Rectors and Visitors of George Mason Univ.,* 411 F.3d 474, 495 (4th Cir.2005) ("The Court has never suggested that anything more than voluntary acceptance of federal funds in the face of an unambiguous waiver condition is required to demonstrate a State's knowing agreement to that condition.").

U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (waiver of sovereign immunity confined to suit in own courts unless state. clearly evidences intent to allow suits in federal court).... Although the waiver must be unambiguous, we have never held that an express written waiver is invariably required. On the contrary, we have recognized that a state may waive its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity.... [A] waiver of Eleventh Amendment immunity has been found when the state's conduct during the litigation clearly manifests acceptance of the federal court's jurisdiction or is otherwise incompatible with an assertion of Eleventh Amendment immunity. *See, e.g., Hankins v. Finnel,* 964 F.2d 853, 856–58 (8th Cir.1992) (state waived immunity by "seek[ing] to take advantage of the suit for its own benefit"); *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984) (defendants' conduct during litigation "indicates consent to this suit and an acceptance of the federal court's jurisdiction"); *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.,* 744 F.2d 880, 886 (1st Cir. 1984) (where defendant not only appeared and defended on the merits but also filed a counterclaim and third-party complaint, court had "little trouble concluding that [it] voluntarily submitted to the jurisdiction of the federal court, thereby waiving any Eleventh Amendment immunity"); *In re Corporacion de Servicios Medico Hospitalarios de Fajardo,* 123 B.R. 4, 6–7 (Bankr.D.P.R. 1991) (defendant waived any Eleventh Amendment immunity by waiting until the eve of trial to first raise defense, after having participated in extensive pretrial proceedings).

*Hill,* 179 F.3d at 759.

█ . In the case at bar, plaintiff argues that JSU has waived its Eleventh Amendment immunity by appearing and defending the case on the merits for over eight months before attempting to raise its immunity defense. However, while JSU's motion to dismiss on immunity grounds was filed nearly eight months after plaintiff's suit was filed, a finding of waiver must be based on more than the mere passage of time; it depends on finding that JSU actually participated in the lawsuit and defended the plaintiff's claims on the merits, thereby implicitly foregoing its defense of immunity. The facts supports no such finding here.

Significantly, nearly a year before filing the present lawsuit in this court, plaintiff and her husband had filed two separate lawsuits against JSU and a number of JSU officials in state court raising claims relating to her employment with JSU. Both cases were removed to this court, as Civil Action Nos. 3:07CV452HTW–LRA and 3:07CV597HTW–LRA, respectively. At the time this case was filed in June 2008, case management orders had been entered in the two pending cases and discovery was ongoing. In addition, plaintiffs had an additional lawsuit pending against JSU in the Circuit Court of Hinds County, as well as an administrative claim pending in the Mississippi Workers' Compensation Commission. JSU timely filed an answer and affirmative defenses, in which it asserted as defenses, *inter alia,* failure to state a claim for relief and lack of subject matter jurisdiction.

The record reflects that upon plaintiff's filing the present action, Magistrate Judge James Sumner conducted a telephonic case management conference on August 6, 2008, but no case management order was entered at that time. Instead, the magistrate judge directed that a settlement conference be conducted covering all the federal cases, the state court action and the administrative proceeding, and set the con-

ference for September 12. Immediately following the magistrate judge's order scheduling the settlement conference, plaintiffs filed in all three federal cases identical notices to take the depositions of the individual defendants in the various cases prior to the settlement conference. Following these depositions, the settlement conference was held September 12, but the cases did not settle. No further activity is reflected in this case until five months later, when JSU filed an amended answer expressly raising its immunity defense. In that five months, however, the parties had been working toward completing discovery in the other two federal cases, which defendants had made clear was a priority, since the court in those cases had already been requested to extend the discovery deadline a number of times. Immediately upon JSU's filing its amended answer herein, the magistrate judge entered a case management order, and soon thereafter, JSU filed its present motion to dismiss.

What is clear from the foregoing is that JSU took no action to defend *this case* on the merits. JSU did nothing more *in this case* than participate in a settlement conference that covered not only this case, but all the other litigation pending between the parties in state and federal court. Moreover, while JSU may have participated in a number of depositions, it is clear to the court that those depositions were taken primarily for the two prior-filed actions, to comply with the discovery deadlines in those cases. The court cannot conclude that JSU was defending *this case* on the merits simply because plaintiff filed her notices for those depositions in this case as well. The fact is, the only activity *in this case*, other than the settlement conference and those depositions, which were taken primarily for the other cases, was JSU's initial answer, its amended answer, and its motion to dismiss. In sum, it is clear that JSU has not defended *this case* on the

merits, and therefore, it has not waived its right to assert its Eleventh Amendment immunity by virtue of its minimal participation *in this case.*

Based on the foregoing, it is ordered that defendants' motion to dismiss is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.